UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EVELYN C.,

                              Plaintiff,

        v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

                              Defendant.

CASE NO. C18-1294 BHS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DENIAL OF BENEFITS

## I.        BASIC DATA

Type of Benefits Sought:

        ( ) Disability Insurance

        (X) Supplemental Security Income

Plaintiff's:

        Sex:  Female

        Age:  48 at the time of alleged disability onset.

Principal Disabilities Alleged by Plaintiff:  Human Immunodeficiency Virus ("HIV"),
diabetes, peripheral neuropathy, carpal tunnel, arthritis, left hand injury, dyslexia, chronic
pain, depression, sinus issues.  AR at 155-56.

Disability Allegedly Began:  September 1, 2012.[1]

Principal Previous Work Experience:  Commercial/industrial cleaner; production assembler; brush painter; cook helper/dishwashing kitchen helper/cashier (composite job); bartender; waitress.

Education Level Achieved by Plaintiff:  Eighth grade.

## II.    PROCEDURAL HISTORY—ADMINISTRATIVE

Before Administrative Law Judge ("ALJ"):

Date of Hearing:  April 13, 2017, May 25, 2017

Date of Decision:  August 28, 2017

Appears in Record at:  AR at 190-205

Summary of Decision:

The claimant has not engaged in substantial gainful activity since June 24, 2014, the application date.  *See* 20 C.F.R. §§ 416.971-76.

The claimant has the following severe impairments:  HIV, diabetes mellitus, carpal tunnel syndrome, peripheral neuropathy, Raynaud's syndrome, drug use and substance addiction disorders, affective disorders, and borderline intellectual functioning.  *See* 20 C.F.R. § 416.920(c).

The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  She can stand and/or walk with normal breaks for three hours in an eight-hour workday or work tasks permit a sit/stand option.  She can sit with normal breaks for six hours in an eight-hour workday.  She is limited to frequent

---

[1] Plaintiff filed a prior application for disability benefits, which was denied on August 10, 2012.  *See* AR at 125-42.  The Appeals Council denied review, and Plaintiff did not seek review in the District Court.  *See id.* at 148-50.

bilateral handling, fingering, and feeling. She must avoid concentrated exposure to hazards, vibration, and extreme cold. She can frequently climb ramps and stairs, and crawl. She can occasionally climb ladders, ropes, and scaffolds. Plaintiff can understand and remember simple, routine work tasks. Work tasks should not involve reading above the seventh grade level. She can follow simple work guidelines, but goals should be set by a supervisor. She cannot perform at a production rate pace, but can perform goal-oriented work. There can be occasional changes to the work environment. She would be off-task about 10 percent of the time in an eight-hour workday.

The claimant is unable to perform any past relevant work. *See* 20 C.F.R. § 416.965.

The claimant was in the younger individual age category on the date her application was filed. She subsequently changed age category to closely approaching advanced age. *See* 20 C.F.R. § 416.963.

The claimant has a limited education and is able to communicate in English. *See* 20 C.F.R. § 416.964.

Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled. *See* 20 C.F.R. § 416.968.

Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. *See* 20 C.F.R. §§ 416.969, 416.969(a).

The claimant has not been under a disability, as defined in the Social Security Act, since June 24, 2014, the date the application was filed. 20 C.F.R. § 416.920(g).

Before Appeals Council:

Date of Decision: July 20, 2018

Appears in Record at: AR at 212-14

Summary of Decision: Denied review.

### III.     PROCEDURAL HISTORY—THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff   (X) Commissioner

### IV.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

### V.     EVALUATING DISABILITY

Plaintiff, as the claimant, bears the burden of proving she is disabled within the meaning of the Social Security Act ("Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial

gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. § 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner. *Id.*

## VI.    ISSUES ON APPEAL

A.    Whether the ALJ properly evaluated Plaintiff's knee impairment at step two of the disability evaluation process.

B.    Whether the ALJ properly evaluated Plaintiff's mental impairments at step three of the disability evaluation process.

C.    Whether the ALJ properly evaluated Plaintiff's symptom testimony.

D.    Whether the ALJ properly evaluated the medical evidence, including the opinions of Wayne Dees, Psy.D.; Rebekah Cline, Psy.D.; Michelle Kim, Ph.D.; Christine Youdelis-Flores, M.D.; Albert Gee, M.D.; and Rachel

Bender Ignacio, M.D.

E.     Whether the ALJ properly assessed Plaintiff's RFC and conducted the step

five evaluation.

## VII.     DISCUSSION

**A.     The ALJ Did Not Harmfully Err in Evaluating Plaintiff's Knee Impairment at Step Two**

Plaintiff argues that the ALJ erred at step two in failing to find that her alleged

knee impairment was severe.  Pl. Op. Br. (Dkt. # 10) at 2-3.  The Court disagrees.

In 2017, Plaintiff underwent an MRI on her left knee, which revealed diffuse

synovitis around the knee joint, a large radial tear of the medial meniscus, red marrow

reconversion, tricompartmental chondromalacia, and mild patellofemoral osteoarthritis.

AR at 890.  Albert Gee, M.D., opined that the radial tear "essentially defunctionalized the

entire medial meniscus," but felt that surgery was unlikely to "restore[] any of the

biomechanics of the meniscus in the extreme loading conditions that it is under from a

tension standpoint."  *Id.* at 880.  Travis Fann, PA-C, opined that Plaintiff was not able to

"walk a block at a reasonable pace on rough or uneven surfaces," "carry out routine

ambulatory activities" such as grocery shopping, and "climb several stairs at a reasonable

pace with use of only a single hand rail."  *Id.* at 877.

The ALJ did not discuss this evidence as part of his step two analysis.  *See id.* at

192-93.  He did, however, discuss Dr. Gee's opinion when assessing Plaintiff's RFC.  *See*

*id.* at 201.  There, the ALJ found that Dr. Gee's opinions were contradicted by Plaintiff's

self-reports of independence in her activities of daily living. *Id.* The Court addresses the ALJ's evaluation of Dr. Gee's opinions below.

The step two inquiry is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)); *see also Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step two inquiry is a *de minimis* screening device to dispose of groundless claims."). At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe." 20 C.F.R. § 416.920(c). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290). As long as the claimant has at least one severe impairment, the disability inquiry moves on to step three. *See* 20 C.F.R. § 416.920(d).

The step two inquiry "is not meant to identify the impairments that should be taken into account when determining the RFC." *Buck*, 869 F.3d at 1048-49. At the RFC phase, the ALJ must consider the claimant's limitations from all impairments, including those that are not severe. *Id.* at 1049. "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Id.* (emphasis omitted).

The ALJ erred by failing to consider Plaintiff's knee impairment severe at step two. The evidence indicated that Plaintiff's meniscus tear had more than a minimal effect on her functional abilities. *See* AR at 877. However, the ALJ's error was harmless

at step two because the ALJ found that Plaintiff had at least one severe impairment, and thus continued the disability evaluation. *See Buck*, 869 F.3d at 1049. The Court addresses later in this opinion whether the ALJ committed harmful error at the RFC stage in assessing Plaintiff's knee impairment, particularly with respect to Dr. Gee's opinions.

**B.      The ALJ Harmfully Erred in Evaluating Plaintiff's Mental Impairments at Step Three**

Plaintiff challenges the ALJ's determination that she did not meet a listing for her mental impairments at step three of the disability evaluation process. Pl. Op. Br. at 3-5. Plaintiff argues that she met the criteria under paragraphs B and C for listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), or 12.06 (anxiety and obsessive-compulsive disorders). *Id.*

To be found disabled under listings 12.02, 12.04, or 12.06, a claimant must first meet the criteria under paragraphs A and B, or paragraphs A and C. 20 C.F.R. Part 404, Subpart P, App'x 1. "A claimant must 'present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1173 (9th Cir. 2013) (emphasis in original) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001)). The ALJ focused his discussion on paragraphs B and C, so the Court will do the same. *See* AR at 193-94.

To satisfy the paragraph B criteria of listing 12.02, 12.04, or 12.06, Plaintiff must have at least one extreme or two marked limitations in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting

with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Part 404, Subpart P, App'x 1, § 12.01.

To satisfy the paragraph C criteria for listing 12.02, 12.04, or 12.06, Plaintiff must show (1) that she is receiving ongoing treatment that diminishes the signs and symptoms of her disorder, and (2) that she has minimal capacity to adapt to changes in her environment or to demands that are not already part of her daily life.  *Id.*

The evidence conflicts as to whether Plaintiff's impairments met a listing. *Compare* AR at 431-42, 661-65 *with* 857-61, 906-19, 925-26.  Ordinarily, the ALJ is entitled to resolve conflicts in the evidence.  *See Andrews*, 53 F.3d at 1039.  However, as discussed below, the ALJ erred in evaluating parts of the medical evidence.  *See infra* Part VII.D.  Those errors erode the Court's confidence that the ALJ correctly assessed Plaintiff's alleged impairments.  Had the ALJ accepted the opinions of Christine Youdelis-Flores, M.D., for example, he may have concluded that Plaintiff had marked limitations in all four of the areas of mental functioning identified in paragraph B of listings 12.02, 12.04, and 12.06.  *See* AR at 908-09.  As a result, the Court must conclude that the ALJ harmfully erred in analyzing Plaintiff's impairments at step three.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).  The Court notes, however, that it cannot reweigh this evidence, and thus does not decide whether Plaintiff in fact proved she met a listing, only that the ALJ erred in his analysis of that question. *See Thomas*, 278 F.3d at 954.

**C.  The ALJ Erred in Evaluating Plaintiff's Symptom Testimony**

Plaintiff challenges the ALJ's rejection of her symptom testimony.  *See* Pl. Op. Br. at 13-18.  The Court agrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptoms; she does not have to show that the impairment could reasonably be expected to cause the severity of the symptoms alleged.  *Id.*  The ALJ found that Plaintiff met this step because her medically determinable impairments could reasonably be expected to cause the symptoms she alleged.  AR at 196.

If the claimant satisfies the first step, and there is no evidence of malingering,[2] the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so.  This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15).  In evaluating the ALJ's determination at this

---

[2] The Commissioner argues that there was evidence of malingering, which in itself would provide a basis for rejecting Plaintiff's symptom testimony.  *See* Def. Resp. Br. (Dkt. # 14) at 6.  However, the ALJ did not rely on this evidence in isolation.  He instead pointed to it as support for the proposition that the objective medical evidence was inconsistent with Plaintiff's mental health complaints.  *See* AR at 199.  The Court addresses the ALJ's treatment of the evidence in this context rather than the context urged by the Commissioner.

step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

The ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was "not entirely consistent with the medical evidence and other evidence in the record." AR at 196. The ALJ first analyzed Plaintiff's physical complaints, and found that the objective medical evidence did not support the severity of symptoms Plaintiff alleged. *Id.* at 196-97. The ALJ next analyzed Plaintiff's mental health complaints, and again found that the objective medical evidence did not support the severity of symptoms Plaintiff alleged. *Id.* at 197-99. The ALJ last rejected Plaintiff's symptom testimony because he determined it was inconsistent with Plaintiff's daily activities. *Id.* at 200. The Court addresses each point in turn.

### 1. The ALJ Erred in Rejecting Plaintiff's Physical Complaints as Inconsistent with the Objective Medical Evidence

Plaintiff alleged that she was unable to work due to ongoing pain, particularly in her hands and feet. *Id.* at 90-94. She alleged that she can only stand for 15 minutes at a time, can never sit without pain, and needs a walker to get around. *Id.* at 92-93. Plaintiff alleged that she had difficulty grasping and holding things because of pain in her dominant left hand. *Id.* at 91.

The ALJ rejected Plaintiff's physical symptom testimony as inconsistent with the objective medical evidence. *Id.* at 196-99. He summarized Plaintiff's physical

complaints, and cited to several medical records relating to those complaints. *Id.* at 196-97. An ALJ may reasonably reject the claimant's subjective symptom testimony when it is inconsistent with or contradicted by the medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). But the ALJ's explanation must be clear and convincing. *See Trevizo*, 871 F.3d at 678. Viewing the evidence as a whole, the ALJ's explanation here did not meet this standard.

The ALJ walked through each of Plaintiff's allegedly severe impairments, but much of his discussion focused on irrelevant details. The ALJ noted that Plaintiff's HIV and diabetes were well-controlled by medication, and that Plaintiff failed to take her medication at times. *See* AR at 196-97. Although impairments that are well-controlled by medication are not disabling, *Warre ex rel. E.T. IV v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006), the aspects of these conditions (Plaintiff's white blood cell count and blood glucose levels) that were controlled by medication are unrelated to her physical limitations, which generally relate to mobility, *see* AR at 90-94.

The ALJ pointed to several other medical findings that support rather than detract from Plaintiff's testimony. The ALJ noted that Plaintiff underwent a nerve conduction study that showed carpal tunnel syndrome. AR at 197. The ALJ also noted that "the record references an ongoing diagnosis of Raynaud's syndrome," and that Plaintiff "displayed features compatible with peripheral neuropathy." *Id.* And the ALJ noted that an MRI of Plaintiff's left knee revealed synovitis, as well as a large radial tear of the medial meniscus. *Id.* That Plaintiff experienced hand and foot pain, and difficulty standing, sitting, and walking is not unexpected based on these findings.

The ALJ noted several objective findings that were inconsistent with Plaintiff's testimony regarding her physical limitations.  The ALJ noted that Plaintiff had full upper extremity strength on testing.  *Id.* at 196, 785, 824-26.  Plaintiff was able to walk on her heels and toes, hop on each foot, and perform a deep knee bend.  *Id.* at 196, 785.  Plaintiff had normal gait and intact coordination.  *Id.*  Further, although Plaintiff claimed she needed a walker, Dr. Gee—the physician who diagnosed Plaintiff's meniscus tear— opined that Plaintiff did not need an ambulatory assistive device.  *Id.* at 197, 877.

Taken in isolation, these objective findings could potentially support the ALJ's determination.  But the ALJ's overall discussion of the objective medical evidence indicates that the ALJ drew unreasonable conclusions from that evidence.  The fact that Plaintiff's white blood cell count was under control says nothing about Plaintiff's allegations that she had trouble sitting, standing, and walking.  The fact that Plaintiff had carpal tunnel syndrome and a meniscus tear in no way contradicts her allegations of pain. The Court cannot confidently conclude that the ALJ would have reached the same disability determination based on the few objective findings he cited if he had appropriately considered the remainder of the objective medical evidence.  *See Stout*, 454 F.3d at 1055-56.  The ALJ thus erred in rejecting Plaintiff's symptom testimony regarding her physical symptoms as inconsistent with the objective medical evidence.

### 2. The ALJ Erred in Rejecting Plaintiff's Mental Health Complaints as Inconsistent with the Objective Medical Evidence

Plaintiff alleged that, in addition to her physical limitations, she was unable to work because she had difficulty reading and writing, possibly due to dyslexia.  AR at 90,

374. Plaintiff alleged that she had angry outbursts where she would cry and get irritated multiple times a week. *Id.* at 93. Plaintiff alleged that she had memory problems, difficulty maintaining attention, and difficulty dealing with stress. *Id.* at 94, 379-80.

The ALJ rejected Plaintiff's testimony regarding these mental health symptoms for two reasons. First, the ALJ determined that Plaintiff had not complied with her mental health treatment, including taking prescribed medications. *See id.* at 198-99. Second, the ALJ determined that although Plaintiff alleged worsening memory problems and a decline in cognitive functioning, the evidence indicated otherwise. *Id.* at 199. Neither reason is clear or convincing.

Much like the ALJ's treatment of the medical evidence relating to Plaintiff's physical symptoms, his discussion of Plaintiff's noncompliance with treatment focuses on trivial facts. The ALJ reasonably interpreted the evidence to conclude that Plaintiff had not consistently sought treatment for depression or complied with medication recommendations.[3] *See id.* But Plaintiff's primary complaints related to cognitive functioning, such as difficulty reading, writing, remembering, and maintaining attention, which were not due solely to her depression. *See id.* at 90, 94, 374, 379-80. Plaintiff should have complied with her doctors' treatment recommendations, but her failure to do

---

[3] It is important to note, however, that "'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'" *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). This is particularly true where, as here, the claimant has shown poor insight and judgment due to her mental impairments. *See* AR at 435, 448, 909.

so does not contradict her testimony regarding her cognitive difficulties. The ALJ thus erred in relying on Plaintiff's noncompliance as a basis for rejecting her testimony.

The ALJ further erred in rejecting Plaintiff's testimony based on evidence that allegedly showed no decline in cognitive functioning. *See id.* at 199. The ALJ noted that Plaintiff earned a full-scale IQ score of 63, but that the examiner who administered this test felt it was a low estimate of Plaintiff's actual IQ. *Id.* That suggests an inaccurate test result, but it does not contradict Plaintiff's allegations of cognitive impairments. The ALJ further noted that Dr. Dees raised concerns about whether Plaintiff gave full effort during his psychological examination. *Id.* Again, that calls into question the validity of Dr. Dees's determinations, but it does not contradict Plaintiff's claims of cognitive impairment. Moreover, the ALJ acknowledged that Plaintiff later underwent further cognitive testing, which showed mildly impaired to borderline overall intellectual functioning. *Id.* The ALJ's discussion of this evidence does not convince the Court that Plaintiff's testimony was inconsistent with or contradicted by the medical evidence. The ALJ thus erred in rejecting Plaintiff's symptom testimony on this basis. *See Trevizo*, 871 F.3d at 678.

### 3. The ALJ Erred in Rejecting Plaintiff's Symptom Testimony as Contradicted by Plaintiff's Daily Activities

The ALJ last rejected Plaintiff's symptom testimony because he found that it was contradicted by her daily activities. AR at 200. An ALJ may reasonably discount a claimant's symptom testimony when it is contradicted by the claimant's daily activities. *See Fair*, 885 F.2d at 603. But "the mere fact that a plaintiff has carried on certain daily

activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  "One does not need to be 'utterly incapacitated' in order to be disabled."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair*, 885 F.2d at 603).  The plaintiff's daily activities must contradict her testimony or reflect transferable work skills.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

The ALJ erred in rejecting Plaintiff's symptom testimony based on her daily activities.  The activities the ALJ cited are the bare minimum activities of life.  For example, the fact that Plaintiff "showered almost daily" in no way contradicts her testimony that she had ongoing hand and foot pain, and could only stand and walk for a short period of time.  *See* AR at 90-94, 200.  The fact that Plaintiff watched television, shopped for groceries, and prepared her own food does not contradict her claims of physical and mental impairments.  *See id.* at 200, 374, 432.

In sum, the ALJ did not provide clear and convincing reasons to reject Plaintiff's symptom testimony.  The Court cannot confidently conclude that he would have reached the same nondisability determination had he appropriately considered this evidence.  *See Stout*, 454 F.3d at 1055-56.  The ALJ thus harmfully erred in rejecting Plaintiff's symptom testimony.  *See id.*

**D.      The ALJ Partially Erred in Evaluating the Medical Evidence**

Plaintiff challenges the ALJ's evaluation of the medical evidence.  Pl. Op. Br. at 5-11.  She argues that the ALJ erred in evaluating the opinions of Wayne Dees, Psy.D.,

Rebekah Cline, Psy.D., Michelle Kim, Ph.D., and Christine Youdelis-Flores, M.D., regarding Plaintiff's mental limitations. *Id.* at 5-8. Plaintiff further argues that the ALJ erred in evaluation the opinions of Albert Gee, M.D., and Rachel Bender Ignacio, M.D., regarding Plaintiff's physical limitations. *Id.* at 8-11.

The ALJ must provide "specific and legitimate reasons that are supported by substantial evidence in the record" to reject the contradicted opinions of a treating or examining doctor. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042). The ALJ can satisfy this requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). The Court may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

**1.      The ALJ Did Not Harmfully Err in Rejecting Dr. Dees's Opinions**

Dr. Dees examined Plaintiff in June 2013. *See* AR at 431-42. He opined that Plaintiff had marked limitations in a number of cognitive areas, including the ability to maintain regular attendance and work within a schedule, adapt to changes in a work setting, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting. *Id.* at 433.

The ALJ gave little weight to Dr. Dees's opinions. *Id.* at 200. The ALJ determined that Plaintiff was not taking her medications regularly at the time of Dr. Dees's assessment, other exams showed stable mood and improved overall functioning

when Plaintiff was compliant with her medications, and she displayed questionable effort on testing. *Id.*

Plaintiff has not met her burden of showing that the ALJ harmfully erred in evaluating the opinions of Dr. Dees. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). Plaintiff did not argue that the ALJ erred in discounting Dr. Dees's opinions in her opening brief. *See* Pl. Op. Br. at 5. The Court will not address the ALJ's evaluation of medical opinions for which Plaintiff has not identified any specific errors. *See Thomas*, 278 F.3d at 954.

### 2. The ALJ Did Not Harmfully Err in Rejecting Dr. Cline's Opinions

Dr. Cline examined Plaintiff in November 2015. *See* AR at 857-61. Dr. Cline opined that Plaintiff had marked limitations in her abilities to: understand, remember, and persist in tasks by following detailed instructions; learn new tasks; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal work day or week without interruptions from her psychological symptoms. *Id.* at 859.

The ALJ gave little weight to Dr. Cline's opinions. *Id.* at 200. The ALJ determined that Plaintiff was not actively engaged in mental health treatment at the time of Dr. Cline's evaluation, and Dr. Cline's opinions were inconsistent with her exam findings. *Id.* Although the first of these reasons for rejecting Dr. Cline's opinions is unconvincing, the second reason survives scrutiny.

The ALJ's first reason for rejecting Dr. Cline's opinions is essentially a criticism of Plaintiff for failing to seek mental health treatment. But, as mentioned above, ALJs

should avoid questioning an individual with poor insight and judgment due to her mental health for exercising poor judgment in seeking treatment. *See Nguyen*, 100 F.3d at 1465. "[T]he fact that [Plaintiff] may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that [Dr. Cline's] assessment of [Plaintiff's] condition is inaccurate." *Id.*

The ALJ's second reason, which Plaintiff did not challenge in her opening brief, is a reasonable interpretation of the evidence. An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Here, Dr. Cline reported from her mental status exam that Plaintiff's thought process, orientation, perception, memory, and concentration were within normal limits, while her fund of knowledge was not, and her abstract thought, and insight and judgment were ambiguous. *See* AR at 861. That Plaintiff's thought process, perception, memory, and concentration were within normal limits tends to contradict Dr. Cline's opinions that Plaintiff was markedly limited in her ability to understand, remember, and carry out detailed instructions, or learn new tasks. The only area where Dr. Cline explicitly noted that Plaintiff was not within normal limits was as to her fund of knowledge, but that does not support a determination that, for example, Plaintiff was markedly limited in her ability to maintain appropriate behavior or communicate and perform effectively in a work setting. The ALJ reasonably found that Dr. Cline's examination findings did not support her opinions, and justifiably rejected Dr. Cline's opinions on this basis.

Although the ALJ erred in relying on Plaintiff's failure to pursue mental health treatment as a reason to discount Dr. Cline's opinions, that error was harmless. The ALJ's second reason for discounting Dr. Cline's opinions was nonetheless valid, making the ALJ's error inconsequential to the ultimate disability determination, and therefore harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

### 3. The ALJ Did Not Harmfully Err in Evaluating Dr. Kim's Opinions

Dr. Kim evaluated Plaintiff in August 2016. AR at 661-65, 869-75. Dr. Kim opined that Plaintiff had mild neurocognitive disorder due to multiple etiologies. *Id.* at 872. Dr. Kim opined that Plaintiff's overall intellectual abilities fell in the "mildly impaired/borderline range." *Id.* Plaintiff's verbal reasoning, perceptual reasoning, and word reading abilities were all mildly impaired. *Id.* Her cognitive functioning, including problem solving, abstract reasoning, and recognition memory were impaired. *Id.*

The ALJ gave partial weight to Dr. Kim's opinions. *Id.* at 201. The ALJ reasoned that Dr. Kim did not provide a functional assessment, but that Dr. Kim's assessments of mild impairment were consistent with objective testing, Plaintiff's past work experience, and Plaintiff's daily activities. *Id.*

Just like the ALJ's treatment of Dr. Dees's opinions, Plaintiff has failed to meet her burden of showing that the ALJ harmfully erred in evaluating Dr. Kim's opinions. *See Ludwig*, 681 F.3d at 1054 (citing *Shinseki*, 556 U.S. at 407-09). Plaintiff merely argues that the ALJ was wrong in concluding that Dr. Kim's opinions were consistent with objective testing, Plaintiff's past work experience, and Plaintiff's daily activities. Pl. Op. Br. at 6. But Plaintiff has not specified any particular aspects of Dr. Kim's opinions

that should have been considered differently, nor how the outcome would be different

had the ALJ given different weight to Dr. Kim's opinions.  Thus, Plaintiff has not shown

that the ALJ committed harmful error.

### 4. The ALJ Harmfully Erred in Rejecting Dr. Youdelis-Flores's Opinions

Dr. Youdelis-Flores was Plaintiff's treating doctor.  *See* AR at 445-52, 666-73,

699-710, 740-47, 758-70, 906-19.  In April 2017, Dr. Youdelis-Flores issued an opinion

stating that Plaintiff was unable to meet competitive standards in a number of work areas,

including the ability to: remember work-like procedures; maintain regular attendance;

sustain an ordinary routine without special supervision; perform at a consistent pace

without an unreasonable number and length of rest periods; accept instructions and

respond appropriately to criticism from supervisors; respond appropriately to changes in

the work setting; deal with normal work stress; and be aware of normal hazards and take

appropriate precautions.  *Id.* at 908.  Dr. Youdelis-Flores further opined that Plaintiff was

seriously limited in her ability to: understand, remember, and carry out very short, simple

instructions; work in coordination and get along with coworkers; make simple work-

related decisions; complete a normal work day or week without interruptions from her

symptoms; ask simple questions or request assistance; adhere to basic standards of

neatness and cleanliness; and travel in unfamiliar places.  *Id.* at 908-09.  Dr. Youdelis-

Flores last opined that Plaintiff was either seriously limited or unable to meet competitive

standards in her ability to: understand, remember, and carry out detailed instructions; set

realistic goals or make plans independently; deal with the stress of semiskilled and skilled

work; interact appropriately with the general public; and maintain socially appropriate behavior. *Id.* at 909.

The ALJ gave Dr. Youdelis-Flores's opinions little weight. *Id.* at 201. The ALJ determined that Dr. Youdelis-Flores's opinions were "inconsistent with the record." *Id.* The ALJ noted that Dr. Youdelis-Flores indicated that Plaintiff's cocaine use disorder was in remission, but the record showed cocaine use. *Id.* Plaintiff missed most of her psychiatric appointments and did not regularly take her medications. *Id.* The record showed overall improvement in functioning when Plaintiff took her medications. *Id.* And Plaintiff's daily activities indicated less severe cognitive and social limitations than Dr. Youdelis-Flores described. *Id.*

The ALJ's first justification for rejecting Dr. Youdelis-Flores's opinions—that she incorrectly diagnosed Plaintiff's cocaine use disorder as in remission—is too trivial to support the outcome here. An ALJ may consider inconsistencies in the medical record, but a single discrepancy fails to justify outright rejection of the doctor's opinions. *Cf. Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) ("A single discrepancy [in the claimant's statements] fails . . . to justify the wholesale dismissal of a claimant's testimony.") (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883-84 (9th Cir. 2006)). The ALJ did not explain how Dr. Youdelis-Flores's opinions may have changed had she known that Plaintiff used cocaine on a few occasions, and the Court will not perform that analysis for the ALJ.

The ALJ erred in rejecting Dr. Youdelis-Flores's opinion based on Plaintiff's failure to attend psychiatric appointments and comply with her medications. Plaintiffs

have an obligation to treat their impairments. *Cf. Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) ("[A]n 'unexplained, or inadequately explained, failure to seek treatment' may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies.") (quoting *Fair*, 885 F.2d at 603). But again, it is a mistake to chastise one with mental health problems for failing to seek or comply with treatment, particularly where, as here, those mental health problems impair the claimant's judgment and insight. *See Nguyen*, 100 F.3d at 1465.

The ALJ's next reason for rejecting Dr. Youdelis-Flores's opinions—that Plaintiff's overall functioning improved with medication compliance—is not adequately supported. The ALJ only pointed to two records to indicate that Plaintiff improved with medication. *See* AR at 198, 740, 771. At most, those records suggest that Plaintiff's mood improved with medication. *See id.* at 740, 771. Dr. Youdelis-Flores's opinions focus on Plaintiff's cognitive abilities, not her mood. *See id.* at 908-09. Thus, like the ALJ's discussion of Plaintiff's possible cocaine use, this was not an adequate reason to reject Dr. Youdelis-Flores's opinions.

Finally, the ALJ erred in rejecting Dr. Youdelis-Flores's opinions as inconsistent with Plaintiff's daily activities. As discussed above, the ALJ's analysis of Plaintiff's daily activities makes a number of unreasonable logical leaps. *See supra* Part VII.C.3. That Plaintiff "showered almost daily," watched television, and infrequently went grocery shopping does not contradict Dr. Youdelis-Flores's opinions.

In sum, the ALJ failed to give specific and legitimate reasons for rejecting Dr. Youdelis-Flores's opinions. The ALJ's error cannot be considered harmless because the

Court is unable to say with any certainty that the ALJ would have reached the same disability determination if he had properly considered Dr. Youdelis-Flores's opinions. *See Stout*, 454 F.3d at 1055-56.

**5.      The ALJ Harmfully Erred in Rejecting Dr. Gee's Opinions**

Dr. Gee evaluated Plaintiff in early 2017 regarding ongoing knee pain. *See* AR at 876-905. The record includes an opinion purportedly from Dr. Gee but signed by Travis Fann, PA-C. *See id.* at 876-77. That opinion reported that Plaintiff could not do the following on a sustained basis without assistance: walk a block at a reasonable pace on rough or uneven surfaces; carry out routine ambulatory activities including grocery and clothes shopping and banking; and climb several stairs at a reasonable pace with use of only a single hand rail. *Id.* at 877.

The ALJ gave Dr. Gee's opinions little weight. *Id.* at 201. The ALJ reasoned that Dr. Gee's treatment notes indicated only conservative treatment, and that Plaintiff's self-reported independence in her daily activities contradicted Dr. Gee's opinions. *Id.*

The ALJ's first reason for rejecting Dr. Gee's opinions fails. The reason Dr. Gee's records indicate only conservative treatment is because Dr. Gee opined that surgery was unlikely to "actually restore[] any of the biomechanics of the meniscus." *Id.* at 880. Furthermore, Dr. Gee recommended Plaintiff undergo physical therapy and a cortisone injection to see if that led to improvement. *Id.*

The ALJ's second reason for rejecting Dr. Gee's opinions is similarly unconvincing. Again, the ALJ's analysis of Plaintiff's daily activities is unreasonable.

*See supra* Part VII.C.3, VII.D.4. Plaintiff's daily activities do not contradict Dr. Gee's opinions.

The ALJ failed to give specific and legitimate reasons for rejecting Dr. Gee's opinions, and thus erred. *See Lester*, 81 F.3d at 830-31. Like the ALJ's treatment of Dr. Youdelis-Flores's opinions, the Court cannot say with any certainty that the ALJ would have reached the same disability determination if he had properly considered Dr. Gee's opinions. *See Stout*, 454 F.3d at 1055-56. The ALJ thus harmfully erred. *Id.*

### 6.    The ALJ Harmfully Erred in Rejecting Dr. Ignacio's Opinions

Dr. Ignacio was one of Plaintiff's treating physicians. *See* AR at 485-89, 548-49, 572-76, 587-92, 674-98, 716-22, 731-39, 802-12, 920-39. Dr. Ignacio completed a medical opinion form stating that Plaintiff could occasionally lift 10 pounds, frequently lift less than 10 pounds, stand and/or walk for less than two hours in an eight-hour day, and sit for about four hours in an eight-hour day. *Id.* at 920. Dr. Ignacio opined that Plaintiff could frequently twist and stoop, never crouch or climb ladders, and occasionally climb stairs. *Id.* at 921. She opined that Plaintiff could not reach, finger, push, pull, handle, or feel. *Id.* Dr. Ignacio opined that Plaintiff should avoid all exposure to extreme cold, and would be absent from work due to her impairments about three days per month. *Id.*

Dr. Ignacio also opined about Plaintiff's mental impairments. *See id.* at 925-26. She opined that Plaintiff had marked difficulties in maintaining social functioning and completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* at 925. Dr. Ignacio opined that Plaintiff would be unable to perform detailed or

complicated tasks, frequent interaction with coworkers, supervisors, or the public, and fast-paced tasks. *Id.* at 926.

The ALJ gave Dr. Ignacio's opinions little weight. *Id.* at 201. The ALJ explained that Dr. Ignacio's opinion was not completely consistent with the record. *Id.* at 201-02. He stated that Plaintiff had full upper extremity strength on examinations, and mostly normal gait. *Id.* at 201. The ALJ added that Dr. Ignacio referenced Raynaud's syndrome, left meniscal tear, and low back pain as support for her findings, but did not mention HIV, diabetes, or carpal tunnel syndrome. *Id.* at 201-02. The ALJ also determined that no objective evidence supported a severe back impairment. *Id.* at 202. The ALJ did not address Dr. Ignacio's opinions regarding Plaintiff's mental impairments. *See id.*

Although some aspects of the ALJ's reasoning find support in the record, several of his statements are so obviously inaccurate that the Court cannot confidently conclude the ALJ appropriately discounted Dr. Ignacio's opinion. *Cf. Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (holding that "one weak reason," even if supported by substantial evidence, "is insufficient to meet the 'specific, clear and convincing' standard" for rejecting a claimant's testimony) (quoting *Molina*, 674 F.3d at 1112). First, the ALJ clearly erred in reasoning that Dr. Ignacio's opinions were entitled to little weight because she failed to mention HIV, diabetes, or carpal tunnel syndrome. Dr. Ignacio completed an entire form discussing Plaintiff's HIV and accompanying limitations. *See id.* at 922-27. Second, the ALJ's own decision contradicts his determination that the record contains minimal evidence of Raynaud's syndrome. As the

ALJ noted, two separate doctors—Dr. Kim and Dr. Ignacio—both indicated that Plaintiff suffers from Raynaud's syndrome. *Id.* at 197, 693, 726. Third, as discussed above, the ALJ unjustifiably relied on his conclusion that Plaintiff received only conservative treatment for her knee impairment. Again, Plaintiff did not undergo surgery on her knee because Dr. Gee advised against it. *See* AR at 880. Plaintiff received a cortisone injection and a recommendation for physical therapy. *See id.* This does not contradict Dr. Ignacio's opinions.

Some of the ALJ's analysis finds support in the record, such as his determination that the evidence did not support that Plaintiff suffered from a severe back impairment. *See id.* at 202. But the fact that the ALJ so obviously misinterpreted the evidence discussed above undermines any confidence the Court has that the ALJ properly considered Dr. Ignacio's opinions as a whole. The ALJ therefore harmfully erred in rejecting Dr. Ignacio's opinions. *See Stout*, 454 F.3d at 1055-56.

**E.     The ALJ Erred in Assessing Plaintiff's RFC and Conducting the Step Five Evaluation**

Plaintiff argues that the ALJ erred in assessing the RFC and, in turn, conducting the step five evaluation. Pl. Op. Br. at 11-13. Plaintiff's argument is largely based on her earlier arguments regarding the ALJ's failure to properly evaluate the medical evidence and incorporate all of her alleged impairments in the RFC. *See id.* Because the Court has found that the ALJ erred in assessing Plaintiff's testimony and some of the medical evidence, the Court agrees that the ALJ erred in assessing Plaintiff's RFC, and in basing his step five findings on that RFC. *See Robbins*, 466 F.3d at 885 (holding that the ALJ's

1  RFC determination was not supported by substantial evidence where he failed to properly

2  account for all of the evidence).

3  **F.     Scope of Remand**

4         Plaintiff asks the Court to remand for an award of benefits.  Pl. Op. Br. at 18.

5  Remand for an award of benefits "is a rare and prophylactic exception to the well-

6  established ordinary remand rule."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir.

7  2017).  The Ninth Circuit has established a three-step framework for deciding whether a

8  case may be remanded for an award of benefits.  *Id.* at 1045.  First, the Court must

9  determine whether the ALJ has failed to provide legally sufficient reasons for rejecting

10  evidence.  *Id.* (citing *Garrison*, 759 F.3d at 1020).  Second, the Court must determine

11  "whether the record has been fully developed, whether there are outstanding issues that

12  must be resolved before a determination of disability can be made, and whether further

13  administrative proceedings would be useful."  *Treichler v. Comm'r of Soc. Sec. Admin.*,

14  775 F.3d 1090, 1101 (9th Cir. 2014) (internal citations and quotation marks omitted).  If

15  the first two steps are satisfied, the Court must determine whether, "if the improperly

16  discredited evidence were credited as true, the ALJ would be required to find the

17  claimant disabled on remand."  *Garrison*, 759 F.3d at 1020.  "Even if [the court]

18  reach[es] the third step and credits [the improperly rejected evidence] as true, it is within

19  the court's discretion either to make a direct award of benefits or to remand for further

20  proceedings."  *Leon*, 880 F.3d at 1045 (citing *Treichler*, 773 F.3d at 1101).

21         The appropriate remedy here is to remand for further proceedings.  Although the

22  first step of the remand-for-benefits framework has been met, the second has not.  The

Court is not in a position to weigh the medical opinions, some of which the ALJ erred in assessing, and others he did not. *See Thomas*, 278 F.3d at 954. The Court cannot assess whether Plaintiff's impairments met a listing based on the conflicts in the evidence. *See supra* Part VII.B. And the Court cannot translate the evidence into an RFC. *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that the ALJ is responsible for translating the evidence into an RFC). Remand for further proceedings is necessary to resolve these issues. *See Leon*, 880 F.3d at 1047-48 (affirming the district court's remand for further proceedings rather than remand for an award of benefits where there were unresolved conflicts and ambiguities in the evidence).

On remand, the ALJ shall reevaluate Plaintiff's testimony; reassess the opinions of Dr. Youdelis-Flores, Dr. Gee, and Dr. Ignacio; reassess Plaintiff's alleged impairments at step three of the disability evaluation process; reassess Plaintiff's RFC; and conduct further proceedings as necessary to reevaluate the disability determination in light of this opinion.

## VIII.    ORDER

Therefore, it is hereby **ORDERED** that the Commissioner's final decision denying Plaintiff disability benefits is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 5th day of March, 2019.

BENJAMIN H. SETTLE
United States District Judge